THE FLINT & WALLING MANUFACTURING COMPANY v.
THE DOUGLASS SUGAR COMPANY *et al.*

1. PETITION IN ERROR, *When not Dismissed.* A petition in error will not be dismissed for want of proper parties where substantial relief sought by the plaintiff in error can be afforded in this court without affecting the rights of any of the parties not in court.

2. SUGAR WORKS—*Date of Lien for Machinery.* Under chapter 141 of the Laws of 1872, the lien of parties who furnished machinery required and contemplated by the original plan of a structure erected for the manufacture of sugar, during the course of its erection, which went into and became a part of the sugar works as originally designed, and which were fixed to and became a part of the realty, dates from the commencement of the building, and is superior to that of a mortgagee whose mortgage was executed after the commencement of the building, but before the machinery was actually furnished.

*Error from Cowley District Court.*

THIS action was brought by the Western Lumber Company against the Douglass Sugar Company and various lien holders, to foreclose a lien on the sugar factory built by the sugar company. The case was brought in Butler county, and afterward removed to Cowley county, because the district judge had been employed as counsel in matters connected with the case. After the change of venue had been taken, the Merchants' Bank of El Dorado, on its application, was made a party defendant, and filed its answer. The case was tried by the court, and full findings of fact were made. From these findings it appears, that during the spring and summer of 1888, the Douglass Sugar Company erected a sugar factory on block 5, in Wilkie's addition to the city of Douglass, in Butler county; that the work was commenced about the month of May; that the superstructure of the building was standing on the premises on the 9th day of June, 1888, and the building with all its fixtures, and all the improvements thereon, and therein, were completed on or about the 15th day of October, 1888; that on the 9th of June, 1888, the

sugar company executed its mortgage on the property in controversy to N. F. Frazier, to secure the sum of $10,600, with interest at 12 per cent. This mortgage was duly recorded on the 11th of June, 1888, and afterwards assigned to the Merchants' Bank. The court found that the defendants E. E. Palmer & Son, United States Wind Engine and Pump Company and Conklin & Swartz each had coördinate liens for the amounts stated in the findings, which were prior and superior to the liens of all other parties to the suit; that the Merchants' Bank held a second lien for the amount of its mortgage and interest. The findings with reference to the claim of the plaintiff in error are as follows:

"That sometime during the month of May, 1888, the said defendant the Douglass Sugar Company, by its president, J. S. Maus, entered into an agreement with the defendant the Flint & Walling Manufacturing Company, by the terms of which agreement it was agreed that said defendant the Flint & Walling Manufacturing Company should furnish to the defendant the Douglass Sugar Company certain pumps, piping, and fixtures, to be used in and about the erection and construction of the sugar works hereinbefore mentioned, which said pumping, piping and fixtures were used in and about the construction and erection of said sugar works. That afterward, on the 5th day of December, 1888, said defendant the Flint & Walling Manufacturing Company duly filed in the office of the clerk of the district court of Butler county, Kansas, a statement for a mechanic's lien, which said statement the court finds to be in all respects according to law; and by the terms of said statement the said defendant the Flint & Walling Manufacturing Company claims a lien upon the premises of the defendant the Douglass Sugar Company, hereinbefore described, for a balance yet due and unpaid for the pumps, fixtures and piping furnished as aforesaid, which said balance, together with interest thereon from the time of the furnishing of the same up to this time, amounts in the aggregate to $490.85. That no part of the material, merchandise, fixtures or machinery hereinbefore mentioned, save and except the materials furnished by the plaintiff, and the material furnished by the defendants Conklin & Swartz, entered into and became a part of the building proper constructed upon said premises; and all the machinery, fixtures, merchandise and

material hereinbefore mentioned, save the material furnished by the two parties hereinbefore mentioned, became fixtures and attachments in and to the building wherein the sugar works were carried on, except the material furnished by the defendant English, Morse & Co., and the defendant Crane Bros. Manufacturing Company."

As a conclusion of law, the court held that the liens of the plaintiff in error and of various defendants who had furnished machinery and fixtures for the sugar factory were inferior to the liens of the bank.

*W. H. Carpenter*, for plaintiff in error.

*Leland & Harris*, for defendant in error Merchants' Bank of El Dorado.

The opinion of the court was delivered by

ALLEN, J.: A motion to dismiss the petition in error is interposed, on the ground of a defect of parties. Conklin & Swartz, whose lien was adjudged superior both to that of the plaintiff in error and of the Merchants' Bank, were never served with a copy of the case-made, nor have they been made parties in this court. The plaintiff in error, in its petition in this court, asks that its lien be declared a first lien on the property involved in the case. On the argument, however, counsel for the plaintiff in error concedes that the judgment as to Conklin & Swartz cannot be disturbed, and he orally asks merely that the lien of the plaintiff in error be declared prior to that of the Merchants' Bank under its mortgage. It is only where no relief can be afforded the plaintiff in error without affecting the rights of parties not before the court that a case must necessarily be dismissed for a want of parties. The real controversy in this court is between the plaintiff in error and the bank. All the parties to the case in the trial court except Conklin & Swartz have entered their appearance in this court, and we perceive no difficulty arising from the absence of Conklin &

1. Petition in error, when not dismissed.

Swartz, whose rights will not be disturbed by granting the relief asked by the plaintiff in error.

The question arising on the merits of the case is, whether parties who furnished the machinery necessary for the completion of the sugar factory, in accordance with the original design, are entitled to a lien dating from the commencement of the building, or only from the time when such machinery was actually furnished. The law covering the case is § 1, chapter 141, of the Laws of 1872, which reads as follows:

"SECTION 1. Any mechanic or other person who shall, under contract with the owner of any tract or piece of land, his agent or trustee, or under contract with the husband or wife of such owner, perform labor or furnish material for erecting, altering or repairing any building or the appurtenances of any building, or any erection or improvement, or shall furnish or perform labor in putting up any fixtures or machinery in or attachment to any such building or improvement, or plant and grow any trees, vines and plants or hedge or hedge fence, or shall build a stone fence, or shall perform labor or furnish material for erecting, altering or repairing any fence or any tract or piece of land, shall have a lien upon the whole tract or piece of land, the building and appurtenances, in the manner herein provided, for the amount due to him for such labor or material, fixtures or machinery. Such lien shall be preferred to all other liens and incumbrances which may attach to or upon such lands, buildings or improvements or either of them subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery, or planting and growing of such trees, vines or plants or hedge or hedge fence or stone fence, or the making of any such repairs or improvements; and if any promissory note bearing not exceeding 12 per cent. interest per annum shall have been taken for any such labor or material, it shall be sufficient to file a copy of such note, with a sworn statement that said note or any part thereof was given for such labor or material used in the construction of any such building or improvement, in the office of the district clerk, and it shall be necessary to file a list of items used, and the lien shall be for the principal and interest aforesaid, as specified in said note."

The trial court held that a lien for machinery dated only

from the time when it was furnished. The question is one of statutory construction. Fixtures and machinery are placed in the same category, and if the conclusion of the trial court is correct, a lien for anything properly denominated a fixture, though placed in the building in accordance with the original design, dates only from the time when it was furnished. In the case of *Thomas v. Mowers*, 27 Kas. 265, it was held that the lien of one who furnished lumber for a house after the date of a mortgage, but where work on the cellar was commenced before the execution of the mortgage, had a lien superior to that of the mortgagee. Where the building of a completed house is one undertaking, carried forward and completed as such, it was held that the liens of all parties furnishing material or performing labor in its erection date from the commencement of the work.

It is contended that the language used in *Mortgage Co. v. Weyerhaeuser*, 48 Kas. 335, upholds the construction of the statute claimed by the defendant in error. It was said in that case by SIMPSON, C., in the opinion:

"Liens, under our law, date from the commencement of the building, when one is constructed; from the making of repairs, when a building is altered or improved; from the furnishing or putting up of fixtures or machinery, when they are attached to or put in any building."

The language used hardly indicates an opinion on the point involved in this case. Unquestionably, where machinery or fixtures are furnished for a building which was a completed structure prior to the time when they were so furnished, the lien would date only from the time when they were so furnished. It would be manifestly wrong to make the lien superior to a mortgage which had been given covering a completed structure. In this case, the court makes a distinction between what is called the building proper and the machinery placed in it in accordance with the original design for a sugar factory. The court found that the defendant N. F. Frazier, to whom the mortgage was originally given, knew at the time of its execution, and prior thereto, that it was the

intention of the sugar company to erect a building on the premises which would include all the machinery, fixtures and merchandise necessary to operate sugar works of the character and kind which were afterward constructed on the premises, and that the bank knew of the facts which were known to Frazier.

The materials and machinery furnished by the plaintiff in error were used in the construction, and became a part of the sugar works in accordance with this original plan, which was known to Frazier and the bank. The court, in its decree, has ordered a sale of the land and the sugar works thereon, which will unquestionably carry to the purchaser title to the materials furnished by the plaintiff in error, as well as to the land, and what is termed the building proper. How can it be said that the machinery and fixtures — which become a part of the realty, because placed in and attached to the building, to be used in connection with it, and which are necessary and essential to the structure originally designed — are a part of the building for the purpose of a sale in satisfaction of the bank's mortgage, yet are not a part of the building for the purpose of securing payment to the plaintiffs in error for furnishing them? The Douglass Sugar Company erected sugar works. Its original purpose when it broke ground for the building was to build a sugar factory, and not to build a mere skeleton of a building which might be used for any purpose.

Under the statute, if a lien for machinery which goes in as a part of the structure originally planned dates only from the time when it is furnished, the same rule must be applied to fixtures. Were we to attempt to follow this rule, we should find ourselves in a maze of interminable difficulties. It would be sufficiently difficult, often, to determine what is machinery. But to determine what is a fixture, within the meaning of the statute, would lead to endless refinements. Bouvier defines "fixtures" as "personal chattels affixed to real estate, which may be severed and removed by the party who has affixed them, or by his personal representative, against the will of the owner of the freehold." He adds:

"There is much dispute among the authorities as to what is a proper definition." Not only window blinds, furnaces, cupboards, shelves, locks, gas fixtures, pier and chimney glasses attached to the walls, grates, and the like, but millstones, bakers' ovens, salt pans, carding machines, cider mills, barns, a varnish house, and a ball room attached to an inn, when erected by a tenant, have been held to be fixtures.

Can it be that the legislature intended that the lumber merchant who furnishes shingles for the roof, the carpenter who nails them on, the merchant who sells the paint and oil, and the painter who paints the finished structure, shall have liens dating from the commencement of the work on the foundation, but that the dealers and mechanics who have furnished and placed in and upon the building window blinds, door locks, grates, mantelpieces or furnaces required by the architect's plan, which become attached to and a part of the realty, as between the owner and the mortgagee, must be postponed and placed in a separate and inferior class of lien holders? We do not think any such discrimination was intended. Every provision of the act can be given effect without such a construction. The language of the section giving a lien for the labor performed or material furnished is very broad, including all cases where buildings are erected, altered, or repaired, or the appurtenances of any building, or any erection or improvement is made. In determining preferences, the statute says:

"Such lien shall be preferred to all other liens and incumbrances which may attach to or upon said lands, buildings or improvements or either of them subsequent to the commencement of such building, the furnishing or putting up of such fixtures or machinery, or the making of any such repairs or improvements."

Possibly the machinery placed in a sugar factory is not strictly a part of the building, but undoubtedly the building erected to hold the sugar factory and the machinery and appliances which fit it for the purpose of manufacturing sugar, taken together, constitute an improvement. That improve-

ment, as a whole, is a sugar factory. The principal thing designed by the owner is an establishment fitted for sugar making. The building is planned and adapted to the machinery as much if not more than the machinery to the building. The liens of all persons who perform labor or furnish materials for that improvement are on an equal footing, and date from the commencement of work on the structure. Had the sugar works been once completed in accordance with the original design, and new or additional machinery or fixtures been afterward purchased and placed in it, then the other provisions of the section would have applied, and the lien would only date from the furnishing of such machinery or fixtures. The distinction to be made is between those things contemplated by the original plan and placed in the structure, in due course of its erection, whether the same be ordinary building materials, fixtures, or machinery, on the one hand, and fixtures or machinery subsequently furnished in accordance with a subsequent change of plan, alteration or improvement in the establishment, on the other.

2. Sugar works— date of lien for machinery.

The judgment is reversed so far only as it affects the priority of liens between the plaintiff in error and the Merchants' Bank, with the direction that the lien of the plaintiff in error be adjudged prior to that of the bank, and ordered paid out of the proceeds of the sale of the mortgaged property before any part thereof be applied to the payment of the claim of the Merchants' Bank.

All the Justices concurring.